DIETZ, Judge.
 

 *12
 
 At its heart, this is a case of straightforward contract interpretation. The plaintiff is an electric cooperative whose bylaws require all members to grant an easement across their land for power lines and other electric services upon request by the cooperative with "reasonable terms and conditions."
 

 Recent storms caused severe erosion near the cooperative's existing transmission lines. So the cooperative sent a letter to Defendant Gina Stevenson, a cooperative member, instructing her to grant a 44-foot-wide easement across her property for the rerouted lines. The letter attached a proposed right-of-way agreement offering her one dollar in consideration for the easement.
 

 Stevenson refused to sign. Then, in what the cooperative alleges was an effort to frustrate the terms of the bylaws, Stevenson conveyed one of her lots to her boyfriend, who was not a member of the cooperative. This forced the cooperative to pursue a condemnation action to secure the easement. The cooperative sued Stevenson and her boyfriend for intentional interference with contract and civil conspiracy, and sought accompanying declaratory relief. The business court entered summary judgment against the cooperative and it then appealed.
 

 We affirm. As explained below, the cooperative's demand for a 44-foot-wide easement across Stevenson's property in exchange for one dollar was not a reasonable term or condition. Thus, the bylaws did not require Stevenson to agree to that request. Because there was no breach of contract, the cooperative's
 
 *677
 
 claims fail as a matter of law. We also affirm the business court's entry of declaratory relief, but clarify that the declaration is limited to the facts of this case, where the request for an easement was not accompanied by reasonable terms and conditions.
 

 Facts and Procedural History
 

 Gina Stevenson owns property on Hatteras Island. Electric power to Stevenson's property is provided by the Cape Hatteras Electric Membership Corporation (CHEMC), an electric cooperative chartered by State law. Stevenson is a member of the cooperative.
 

 When members join the cooperative, they agree to be bound by the cooperative's bylaws. The bylaws contain two provisions at issue in this case.
 

 First, the bylaws provide that a member shall grant an easement to the cooperative when necessary to provide electric service to cooperative members, in accordance with reasonable terms and conditions:
 

 *13
 

 SECTION 1.08. Member to Grant Easements to Cooperative and to Participate in Required Cooperative Load Management Programs.
 
 Each member shall, upon being requested to do so by the Cooperative, execute and deliver to the Cooperative grants of easement or right-of-way over, on and under such lands owned or leased by or mortgaged to the member, and in accordance with such reasonable terms and conditions, as the Cooperative shall require for the furnishing of electric service to him or other members or for the construction, operation, maintenance or relocation of the Cooperative's electric facilities.
 

 Second, the bylaws provide that the cooperative may shut off a member's electricity when that member fails to comply with her membership obligations:
 

 SECTION 2.01. Suspension; Reinstatement.
 
 Upon his failure, after the expiration of the initial time limit prescribed either in a specific notice to him or in the Cooperative's generally publicized applicable rules and regulations, to pay any amounts due the Cooperative or to cease any other noncompliance with his membership obligations, a person's membership shall automatically be suspended; and he shall not during such suspension be entitled to receive electric service from the Cooperative or to cast a vote.
 

 On 21 December 2012, CHEMC sent Stevenson a letter explaining that it needed to reroute its transmission line across Stevenson's property because recent storms had severely eroded the ground near existing lines.
 

 At some point in the month after receiving this letter, Stevenson had an informal discussion with a CHEMC manager about rerouting the transmission lines. Stevenson proposed that the cooperative pay to relocate one of Stevenson's rental homes to a nearby undeveloped lot that she owned. CHEMC did not agree to this proposal.
 

 The following month, on 13 February 2013, CHEMC sent a demand letter to Stevenson attaching a proposed right-of-way agreement. The letter informed Stevenson that "[r]elocation of the transmission line necessitates the granting by you of an easement or right-of-way to the Cooperative." It also stated that "as a member of the Cooperative, you are obligated by its bylaws to grant the easement." The right-of-way
 
 *14
 
 agreement attached to this letter granted a 44-foot-wide easement across Stevenson's property, appearing to come just feet from the front door of one of her rental homes. The agreement stated that Stevenson would grant this easement in exchange for "the sum of One Dollar ($1.00) and other valuable consideration."
 

 The relocation of the transmission lines affected a number of properties, not just those owned by Stevenson, and many residents talked about the cooperative's demands both in person and by email. At some point after Stevenson received the demand letter, CHEMC told the local homeowner's association that it was willing to negotiate with homeowners impacted by the rerouted lines for additional compensation. The record does not contain any direct communications between CHEMC and Stevenson.
 

 On 20 February 2013, Stevenson informed CHEMC by phone that she would not grant the requested easement. A month later, on 26 March 2013, Stevenson deeded her undeveloped
 
 *678
 
 lot to her boyfriend, Joseph Noce, who was not a member of the cooperative and thus not a party to the bylaws. At the time he received the property, Noce was aware that the cooperative had demanded that Stevenson grant an easement across that property.
 

 On 10 April 2013, CHEMC sued Stevenson, seeking a declaration of the parties' rights and obligations under Section 1.08 of the bylaws. The Chief Justice designated the action as a mandatory complex business case the following day.
 

 On 15 April 2013, CHEMC petitioned for condemnation of Stevenson's and Noce's property to obtain the necessary easements. Three days after filing these condemnation petitions, CHEMC sent another letter to Stevenson demanding that she grant the requested easement. CHEMC warned Stevenson that if she did not grant the easement, it could shut off her electricity. Then, on 15 May 2013, CHEMC informed Stevenson that it planned to cut off her power before the upcoming Memorial Day weekend if she did not "communicate with [CHEMC] as soon as possible about the powerline easement sought from her."
 

 Two days later, faced with the possibility of having electricity to her rental properties shut off during one of the busiest vacation weekends of the year, Stevenson consented to an order in the condemnation proceeding conveying the requested easements. The only remaining issue in the condemnation action was the amount of compensation to be paid to Stevenson.
 

 *15
 
 On 10 June 2013, CHEMC filed an amended complaint seeking a declaration of the parties' rights and obligations under both Section 1.08 and Section 2.01 of CHEMC's bylaws. CHEMC also added an intentional interference with contract claim against Noce and a civil conspiracy claim against both Stevenson and Noce.
 

 On cross-motions for summary judgment, the North Carolina Business Court entered summary judgment for Stevenson and Noce on all claims. CHEMC timely appealed. Because this case was designated as a complex business case and assigned to the business court on 11 April 2013, this Court has appellate jurisdiction.
 
 See
 

 Christenbury Eye Ctr., P.A. v. Medflow, Inc.
 
 , --- N.C.App. ----, ----,
 
 783 S.E.2d 264
 
 , 265-66 (2016).
 

 Analysis
 

 On appeal, CHEMC challenges the business court's entry of summary judgment against it on its two tort claims and also challenges a portion of the court's corresponding declaratory judgment. We review an appeal from summary judgment
 
 de novo
 
 .
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. Rule 56(c). When considering a summary judgment motion, a trial court must view the evidence in the light most favorable to the non-movant.
 
 Jones
 
 ,
 
 362 N.C. at 573
 
 ,
 
 669 S.E.2d at 576
 
 .
 

 I. Summary Judgment on Tort Claims
 

 CHEMC first argues that the business court erred in granting summary judgment against it on its claims for civil conspiracy and intentional interference with contract. As explained below, we reject CHEMC's arguments and affirm the business court.
 

 The theory underlying CHEMC's intentional tort claims is straightforward: the cooperative contends that Stevenson was contractually obligated to immediately grant the requested easement and that, by working together to avoid that contractual obligation, both Stevenson and Noce are liable to the cooperative. The flaw in this theory is that Stevenson was not contractually obligated to grant the easement in the first place.
 

 As CHEMC conceded in the business court (and does not challenge on appeal), Section 1.08 of the bylaws requires a cooperative member to
 
 *16
 
 grant an easement only upon "reasonable terms and conditions." Thus, if the cooperative's demand for an easement is made on
 
 unreasonable
 
 terms and conditions, the member has no obligation to grant the easement. And if there was no
 
 *679
 
 obligation to grant the easement, CHEMC's tort claims fail because those claims require CHEMC to prove some improper inducement not to perform a contractual obligation.
 
 See
 

 Griffith v. Glen Wood Co.
 
 ,
 
 184 N.C.App. 206
 
 , 212,
 
 646 S.E.2d 550
 
 , 555 (2007) ("An essential element of a claim for tortious interference with a contract is that 'the defendant intentionally induces the third person not to perform the contract.' ");
 
 see also
 

 New Bar P'ship v. Martin
 
 ,
 
 221 N.C.App. 302
 
 , 310,
 
 729 S.E.2d 675
 
 , 682 (2012) ("[W]here a plaintiff's underlying claims fail, its claim for civil conspiracy must also fail."). Simply put, the determinative issue in this appeal is whether CHEMC's request for the easement was made on reasonable terms and conditions. We hold that it was not.
 

 In February 2013, CHEMC approached Stevenson and demanded that she immediately grant the cooperative a 44-foot-wide easement across her property on scenic Hatteras Island in exchange for one dollar. The demand letter from CHEMC accompanying the proposed right-of-way agreement was wholly unilateral; it stated that "[r]elocation of the transmission line necessitates the granting by you of an easement or right of way to the Cooperative" and that Stevenson was "obligated" to grant the easement. Neither the letter nor the attached right-of-way agreement indicated that the cooperative intended to provide additional compensation to Stevenson in the future or even that the cooperative would examine the impact of the easement to determine if compensation was appropriate.
 

 We hold, as the business court did, that this unilateral demand was not made in accordance with "reasonable terms and conditions." The amicus asks us to delineate the sort of terms and conditions that are reasonable, and thus might satisfy this contract language in future cases. Amicus contends that these bylaws are "common" among electric cooperatives and guidance is needed. But the parties have not briefed this issue, and we are unwilling to delve into this sort of advisory dicta without an appropriate record and argument from the parties.
 
 See
 

 Poore v. Poore
 
 ,
 
 201 N.C. 791
 
 , 792,
 
 161 S.E. 532
 
 , 533 (1931). Moreover, this situation is quite different from one in which parties or amici seek guidance on the meaning of a statute. This is contract language in corporate bylaws. If parties not before the Court want more detail on the meaning of the phrase "reasonable terms and conditions" in those bylaws, they can amend the documents to provide that clarity without waiting on help from the courts.
 

 *17
 
 In sum, we limit this opinion to the facts before us and hold only that a unilateral demand to grant an easement in exchange for one dollar, with no assurances of future compensation or review, is not one made "in accordance with reasonable terms and conditions." As a result, Stevenson was not contractually obligated to grant the easement and CHEMC's tort claims for intentional interference with contract and civil conspiracy fail as a matter of law.
 

 II. Section 2.01 of CHEMC's Bylaws
 

 CHEMC next challenges the business court's declaratory judgment that, as applied to the parties in this case, Section 2.01 of the cooperative's bylaws is unenforceable. For the reasons explained above, we affirm the business court's declaratory judgment with respect to the parties in this case, on the facts of this case. Because CHEMC did not seek an easement from Stevenson on reasonable terms and conditions, Stevenson's refusal to grant the easement was not a breach of the bylaws. We agree with the business court that the cooperative cannot threaten to shut off a member's electricity under Section 2.01 of the bylaws as a means to force that member to grant an easement on unreasonable terms and conditions.
 

 The amicus argues that the business court's declaratory judgment could prevent other electric cooperatives from using similar language in their own bylaws to disconnect power from members who breach the bylaws and refuse to grant an easement even upon reasonable terms and conditions. CHEMC's complaint in this action expressly requested a declaration only with respect to the rights of the parties in this action, and that declaratory judgment is limited to the facts of this case. We interpret the business court's declaratory judgment as limited to
 
 *680
 
 circumstances in which the request for the easement is not made in accordance with reasonable terms and conditions-as was the case here-and we affirm it on that basis.
 

 Conclusion
 

 We affirm the judgment of the North Carolina Business Court.
 

 AFFIRMED.
 

 Judges HUNTER, JR. and INMAN concur.